UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-CV-00351-FDW

| | |
|---|---|
| DENISE B. MOOREHEAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Plaintiff Denise B. Moorehead's Motion for Judgment on the Pleadings (Doc. No. 13) filed on October 31, 2017, and Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 19) filed on February 9, 2018. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Supplemental Security Income ("SSI").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Court DENIES Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 13) and GRANTS the Commissioner's Motion for Summary Judgment (Doc. No. 19).

I. BACKGROUND

Plaintiff filed an application for Title XVI disability benefits on June 20, 2013, alleging disability. (Tr. 328). After her application was denied initially and upon reconsideration (Tr. 202-242), Plaintiff requested a hearing (Tr. 264-66). After the hearing on March 4, 2016 (Tr. 104-

132), the ALJ issued an unfavorable decision (Tr. 79-98). Plaintiff's request for review by the Appeals Council was denied on April 10, 2017. (Tr. 1-6).

The ALJ determined Plaintiff was not disabled since June 20, 2013. (Tr. 79, 98). The ALJ found that Plaintiff has not engaged in substantial gainful activity since June 20, 2013 and that she had the following severe impairments: "degenerative disk disease, arthritis, chronic obstructive pulmonary disease, gastritis, diabetes, obesity, anxiety and depression." (Tr. 81). The ALJ determined that none of these impairments nor any combination of the impairments meet or medically equal a per se disabled medical listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 85). The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b) except:

> [S]he is limited to jobs that will allow her to sit or stand while working; she is limited to only occasional climbing, stooping, crouching, crawling, and bending; she is limited to only occasional work around unprotected heights and dangerous equipment; she is limited to only occasional overhead reaching with her right arm; and she is further limited to jobs performing the simple, routine, repetitive tasks of unskilled work.

(Tr. 88). In response to a hypothetical that factored in the above limitations, the vocational expert ("VE") testified that Plaintiff could perform jobs in the national economy. (Tr. 97). Thus, the ALJ concluded that Plaintiff was not disabled, as defined under the Social Security Act. (Tr. 98).

Plaintiff has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g). Plaintiff claims that the ALJ's decision should be reversed because the ALJ failed to incorporate a limitation in the RFC on her ability to stay on task and erred in his determination of Plaintiff's credibility.

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step

process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her] physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence,"

4

> 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

A. Ability to Stay on Task

Plaintiff argues that this case should be remanded for the ALJ's failure to incorporate a limitation on the ability to stay on task in the RFC or sufficiently explain the omission. (Doc. No. 14 at 9, 15). Plaintiff, relying on Mascio, argues that the ALJ erred because he found Plaintiff to have moderate difficulties with regard to concentration, persistence, or pace in step three. (Doc. No. 14 at 9). The Commissioner argues the ALJ did not err because the ALJ explained his determination of Plaintiff's RFC and his explanation was supported by substantial evidence. (Doc. No. 20 at 8, 11).

5

The Court agrees with the Commissioner. "Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision[.]" Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10 (W.D. Va. Aug. 20, 2015). If the ALJ's discussion of the record allows for the Court to meaningfully review the ALJ's conclusion, remand is not appropriate. See Sizemore v. Berryhill, 878 F.3d 72, 80-81 (4th Cir. 2017) (holding that opinions from two doctors provided substantial support for omission of limitation despite finding moderate difficulties in concentration, persistence, or pace in step three); Ivey v. Berryhill, No. 1:16CV1304, 2017 WL 4236558, at *7 (M.D.N.C. Sept. 22, 2017) ("An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court." (quoting Jones, 2015 WL 5056784, at *10–12)); Del Vecchio v. Colvin, No. 1:14CV116, 2015 WL 5023857, at *6 (W.D.N.C. Aug. 25, 2015) ("Here, unlike in Mascio, the ALJ discussed substantial record evidence in determining Plaintiff's mental RFC, and his explicit reliance on Dr. Estock's opinion adequately explains why Plaintiff's limitations in concentration, persistence, or pace did not translate into any additional restrictions in the ALJ's hypothetical to the VE."); see generally Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) ("[T]he RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" (quoting SSR 96-8p)).

Here, the ALJ's decision expressly stated his conclusion on claimant's ability to complete work functions on account of her mental difficulties and explained how evidence supports his conclusion in the RFC. Specifically, the ALJ stated, "[t]he undersigned finds that limiting the claimant to jobs performing the simple, routine tasks of unskilled work will adequately account for any mental difficulties created by the claimant's alleged depression and anxiety." (Tr. 96). The ALJ noted that there was no evidence Plaintiff ever sought any mental health treatment and she specifically denied receiving mental health treatment on multiple occasions. (Tr. 82, 93, 596, 644). See generally 20 CFR § 404.1530(a), (b) ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work. . . . If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits."); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). In fact, Plaintiff, through her testimony and function report, attributed most of her limitations to her physical impairments, not her mental. (Tr. 86, 106-28, 366-73). Further, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 90); SSR 96-7P[1]. The ALJ highlighted multiple inconsistencies in Plaintiff's reported symptoms and the record, including her own prior statements of symptoms in her application for disability, her own prior statements of symptoms to other treating medical providers, and evaluations by treating and consulting medical providers. (Tr. 90-91, 93-96). Among other things, Plaintiff's performance at

---

[1] This Court reviews the ALJ's decision rendered on March 25, 2016 under SSR 96-7P. See SSR 16P-3P ("This SSR, republished in its entirety, includes a revision to clarify that our adjudicators will apply SSR 16-3p when we make determinations and decisions on or after March 28, 2016. When a Federal court reviews our final decision in a claim, we also explain that we expect the court to review the final decision using the rules that were in effect at the time we issued the decision under review.").

7

her consultative psychiatric evaluation by Dr. Steinmuller, such as her inability to add 2+1, were inconsistent with her report of attending two years of college, her ability to read and write, her daily reading, and ability to pay bills, count change, handle a savings account, and use a checkbook. (Tr. 91, 108-09, 116-17, 340, 369-70, 599). Plaintiff's consultative psychological evaluation by Dr. John Warnken was also extensively discussed, relied on, and given great weight by the ALJ. (Tr. 94-96). As discussed by the ALJ, Dr. Warnken found Plaintiff's test results for IQ and achievement to be invalid and stated it was unclear as to whether or not Plaintiff was purposefully not putting good effort into the testing. (Tr. 94, 643, 646). Dr. Warnken also noted Plaintiff's presentation was "a bit suspicious as to whether or not she actually presented herself accurately." (Tr. 95, 646). This prevented Dr. Warnken from getting a clear picture of Plaintiff's cognitive skills and depression, but he stated he doubted Plaintiff had experienced any decline in cognitive functioning. (Tr. 95, 646-47). Other medical treatment notes by treating medical providers reflect that Plaintiff neither reported neurological or psychiatric symptoms nor did the treating medical providers find any abnormalities. (Tr. 95, 1157-58, 1159, 1196, 1198, 1210, 1212, 1216, 1218). Further, the ALJ gave substantial weight to the findings of the state agency medical consultants. (Tr. 96). The state agency medical consultants, as recorded in their narrative discussions, found Plaintiff's actual mental functional capacity assessment[2] as to Plaintiff's *sustained* concentration and persistence capacities to be Plaintiff "is able to carry out very short and simple instructions." (Tr. 218, 236-37); see Sizemore, 878 F.3d 72, 80-81 (holding that opinions from two doctors provided substantial support for omission of limitation on ability to stay on task in RFC and rejecting argument for remand). This analysis of the evidence in the record,

---

[2] See POMS DI 25020.010 ("It is the narrative written by the psychiatrist or psychologist in section III ("Functional Capacity Assessment") of form SSA-4734-F4-Sup that adjudicators are to use as the assessment of RFC. Adjudicators must take the RFC assessment in section III and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work.").

as a whole, explains the ALJ's decision not to include additional work-related limitations in the RFC to account for Plaintiff's moderate difficulties in concentration, persistence, and pace. The ALJ fulfilled his responsibility of explaining the omission of additional limitations for concentration, persistence, and pace in the RFC, which allowed this Court to conduct a meaningful review and affirm that substantial evidence supports the ALJ's decision.

B. Credibility Determination

Plaintiff argues the Commissioner's unfavorable inferences as to Plaintiff's credibility were unfair and render the decision not supported by substantial evidence. (Doc. No. 14 at 19). The Commissioner disagrees. Section 416.929(a) of the Code of Federal Regulations provides:

> In determining whether you are disabled, we consider all your symptoms, including pain, and *the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence*. We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work (or, if you are a child, your functioning). *However, statements about your pain or other symptoms will not alone establish that you are disabled.* There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and *that*, w*hen considered with all of the other evidence* (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), *would lead to a conclusion that you are disabled.* In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you. *We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work* (or if you are a child, your functioning).

(emphasis added). Therefore, the ALJ must evaluate the claimant's statements as it relates to the entire record to make its determination. An ALJ need not accept the claimant's statements as to symptoms or functions "to the extent they are inconsistent with the available evidence." Craig v.

Chater, 76 F.3d 585, 595 (4th Cir. 1996). This evaluation, which has in the past been termed a credibility determination, may led to a negative determination about the claimant's symptoms or functions. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). In other words, the ALJ may discount or not give weight to the claimant's statements about symptoms or functions but only if explained with specific references to evidence supporting the conclusion. Id.; SSR 96-7P.

On this record, the Court concludes the ALJ properly considered Plaintiff's statements and explained his conclusion that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. See Thompson v. Astrue, 442 F. App'x 804, 809 (4th Cir. 2011) (concluding the ALJ clearly complied with such requirements). To come to this conclusion, the ALJ considered the entire record, including the objective medical evidence, medical opinions, prior work history, failure to seek medical treatment,[3] inconsistency of statements, activities of daily living, and his observations of Plaintiff. (Tr. 79-98). SSR 96-7P. In addition to the inconsistencies previously discussed, the ALJ noted Plaintiff's sporadic work history of only 5 out of 31 years of substantial gainful activity,[4] which suggests reasons other than disability for discontinuing employment (Tr. 91), and Plaintiff's appearance and demeanor at the

---

[3] Plaintiff argues that the ALJ neglected to explore the possibility that Plaintiff's "daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely" and "may be . . . seeing a medical source only as needed for periodic evaluation and renewal of medications." SSR 96-7P. However, SSR 96-7P only provides the ALJ:
> must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering *any explanations that the individual may provide*, or *other information in the case record*, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

(emphasis added). Plaintiff has not pointed to, nor can the Court find, any testimony or information in the case record for another explanation for Plaintiff's failure to obtain the level or frequency of treatment consistent with Plaintiff's complaints justifying further explanation for the ALJ's inference. Therefore, the ALJ's inference was not improper.

[4] Plaintiff takes issue with this observation and other observations by the ALJ. Plaintiff argues Plaintiff's failure to work and inconsistent statements are because of her mental limitations. However, offering an explanation for Plaintiff's inconsistency does not refute that very fact—Plaintiff, throughout the record, was inconsistent, which impacts the reliability and credibility of her statements. Further, as relied on by the ALJ, medical providers questioned Plaintiff's credibility. See Sizemore, 878 F.3d at 83 (noting any minor error raised by claimant meaningless in light of the ALJ's well supported finding that "many of his physicians and health care providers [had] openly questioned [Sizemore's] credibility."). Therefore, the Court finds no fault, and Plaintiff has pointed to no precedent or law, that would allow the Court to find fault with the ALJ's assessment of credibility.

hearing, which did not reflect significant difficulties with memory, attention, or concentration or significant pain or discomfort (Tr. 95-96). The ALJ highlighted Plaintiff's inconsistency as to her report of her education (Tr. 91), her report of symptoms as compared to the objective medical evidence (Tr. 91-96), and her report of symptoms when considering her failure to obtain treatment of the type one would expect for such allegations (Tr. 93). Plaintiff's disagreement with the ALJ's credibility determination does not warrant reversible error. As acknowledged by Plaintiff, the Court does not make credibility determinations or substitute its judgment for the Commissioner's. (Doc. No. 14 at 16). Here, the ALJ properly evaluated Plaintiff's credibility, considered the relevant factors, and explained his reasons and substantial evidence supports his determination.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 13) is DENIED; the Commissioner's Motion for Summary Judgment (Doc. No. 19) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: March 5, 2018

Frank D. Whitney
Chief United States District Judge